Hapgood v. Fisher.

. CHARLES HAPGOOD *versus* EBENEZER FISHER & *als.*

In an action upon a receipt to deliver property attached by a deputy sheriff, it is no defence, that subsequently to the expiration of the thirty days after judgment in the suit upon which the attachment was made, the original debtor died, unless, in the probate court, his estate was represented insolvent.

Although such receipt was taken by direction of the creditor, and the officer's liability in making the attachment is discharged, the creditor can still enforce the payment of such contract in the name of the officer.

ASSUMPSIT, upon a receipt for the delivery of property attached by the plaintiff as a deputy sheriff, on a writ in favor of *Charles Peavey* v. *David Fisher*, in which judgment was recovered by said Peavey in July, 1841.

The defendant contended that the property mentioned in the receipt, was not, at the time of the attachment, the property of David Fisher, but had been by him transferred to his son, David Fisher, Jr., and evidence was introduced to prove that state of facts.

The plaintiff denied the validity of the sale, and introduced testimony to show that the intention of the parties was to delay and defraud creditors.

The defendants also showed that David Fisher died in March, 1842, and it appeared from the probate records, that administration was taken out on his estate by Leonard Fisher, April 5, 1842; that an inventory was returned Jan. 18, 1843, of personal estate to the value of $83,00; that June 20, 1843, a decree was passed allowing $60 to the widow, and the administrator settled his final account Jan. 17, 1844.

The presiding Judge ruled that the action could not be maintained and ordered a nonsuit; to which ruling the plaintiff excepted.

*D. T. Granger*, for plaintiff.

*T. J. D. Fuller*, for defendant.

TENNEY, J. — The attachment of property upon mesne process is not dissolved by the death of the debtor, unless his estate shall be represented insolvent by the executor or ad-

ministrator, and a commission of insolvency shall issue within one year from his death. R. S. chap. 114, § 83. The provision of the statute of 1821, chap. 60, § 32, is substantially the same, excepting, that it is not necessary, that the commission of insolvency shall issue *within one year*, in order to prevent the seizure of the goods upon execution after such commission. The statute of Massachusetts of 1783, chap. 59, § 2, provides, that when any goods or estate are attached on a writ or process, which shall be pending, the same shall not be released or discharged by reason of the death of either party, but be held good to respond the judgment to be given on such suit or process, in the same manner as by law they would have been, if such deceased person had been living. *Provided always*, that when any estate attached as aforesaid, shall, by the executor or administrator of the same, be represented insolvent and a commission of insolvency shall thereupon issue, the attachment made as aforesaid shall have no force or efficacy after the death of the defendant.

If the funds belonging to the estate of a deceased person shall not be sufficient to extend beyond the allowance made to the widow and children, and the expenses of the funeral and the administrator, it shall not be necessary to appoint commissioners. R. S. chap. 109, § 4. By the preceding section, the commission of insolvency is to be issued only upon the representation of insolvency by the administrator or executor. When all the provisions, which have been referred to in the Revised Statutes, are taken together, the representation of insolvency is indispensable to prevent the seizure on execution of property attached upon a writ belonging to a person, who died after the attachment; but the commission of insolvency is unnecessary, when the estate is only sufficient to discharge certain preferred claims.

In the case of *Rockwood v. Allen*, 7 Mass. 254, the suit in which an attachment had been made was pending at the death of the defendant therein. The administrator took the defence of the suit without success. Upon the recovery of judgment and execution, the goods attached were holden,

because there was no representation of insolvency, although there was no other estate after paying the allowance made to the widow, and funeral charges.

*Grosvenor* v. *Gold,* 9 Mass. 209, was where the debtor died insolvent after the rendition of judgment and the issuing of execution ; it was held that the goods could be lawfully sold after the decease.    Judge SEDGWICK, in delivering the opinion of the Court, says, " This proviso does not touch such a case as the one under consideration, because during the thirty days, while the goods were holden, there was no representation or commission of insolvency, and the enacting clause is left to operate.    The goods attached are not to be released."    And afterwards, " It will then include only cases, where there has been a representation of insolvency, and a commission actually issued.    Indeed any other construction would be not only embarrassing and mischievous, but absurd." ` " The act provides in the cases which it contemplates, in substance, that the goods attached shall not be released or discharged, but shall be held to respond the judgment ; just as they would be, if the original defendant were alive, in all cases, except where there has been a representation of insolvency, and a commission upon it." " Leaving out of consideration any statute provision, the execution in this case issued regularly in the lifetime of the judgment debtor, and it did not abate by his death.    Nothing can be more clearly settled than the principle, that if the defendant die after execution sued and before service, it is the duty of the sheriff to proceed to execute the writ, because the debtor's property in the goods was bound absolutely by the teste, before the statute of 23 Car. 2, chap. 3, sect. 16, and ever since that time, except so far as the rights of strangers are involved.    And undoubtedly goods here, are as much bound by an attachment during the time they are holden, as goods in England are, by and from the teste of the writ."    *Patterson* v. *Patten, ex'or,* 15 Mass. 473.

The contract upon which this action is brought, recites that the property described therein, was attached on a writ in favor of Charles Peavey against David Fisher, and also the estimated

value of the same; and those who executed the agreement, engage to keep the property safely, free from expense to the plaintiff or the creditor, in good order and condition; and that they will redeliver the same on demand; and also that they will redeliver it without demand to the plaintiff or the creditor within thirty days from the rendition of judgment in the action.

Under this attachment, the right of the plaintiff to the property so attached, might be defeated on several contingencies; and whatever would defeat his right to the property, would also be a defence to a suit upon the contract. If the plaintiff in the suit had failed therein, neither he, nor the officer for him, could have had any claim upon the defendants, by virtue of their agreement. If the defendant in that suit had died, and there had been administration on his estate, and the estate had been represented insolvent and a commission of insolvency had issued within one year after his decease, or without the issuing of the commission, if the estate was not sufficient to extend beyond the payment of the allowance to the widow and children, and the expenses of the funeral and the administration, before an execution could have issued and the property attached be seized thereon, the attachment would be dissolved. But neither of these events have happened.

The defendants are also released from their obligation in the contract, if the property attached was not that of the debtor, as between him and the creditor at the time of the attachment. This was a fact, the determination of which was prevented by the nonsuit. And to test the questions raised by the exceptions, it must be assumed, that this question of fact would have resulted in favor of the plaintiff.

If the defendants had delivered the property within thirty days after the rendition of judgment, it could have been taken thereon and sold. If instead of the property, they had paid the plaintiff or the creditor within the same period, the estimated value of the property by the contract, they might have been discharged; and the money could have been applied towards the payment of the execution. By the recovery of

the judgment, the taking out of the execution, the putting of it into the hands of the plaintiff, an officer authorized to seize the property and to make sale thereof, and the failure of the defendants to deliver the property or to pay its value, their liability, which was before contingent, became fixed. All that the contract itself and the law required to charge them absolutely had happened ; they would have been liable to a suit, and to judgment upon their contract, for ought which has appeared to the contrary, immediately after, and seven months before the death of the debtor.

It is contended that the defence can be maintained, because the attachment was not dissolved by the failure of the defendants to deliver the property according to their contract, but was subsisting after the expiration of thirty days. It is true that an officer may seize property of certain description, after the expiration of thirty days from the time when judgment was rendered, if the receiptor has not delivered it upon legal demand. *Merrill* v. *Curtis,* 18 Maine, 272. But this principle cannot be invoked as an excuse by the receiptors for a wrongful omission to fulfil their contract. The time had expired, when they had the legal right to redeliver property attached and thereby relieve themselves from their liability. The plaintiff had the right to have seized the property, after the lapse of the thirty days, if he had chosen so to have done, but he was not bound to do this, even if it could have been found, which does not appear. He was entitled to the price of the property as estimated in the receipt. This might have been much more than could have beeen realised from a sale of the property. They had broken their engagement and could not be restored to their condition as it was before the breach. This suit is not to obtain the property attached. It is now too late to be available in consequence of the fault of the defendants. The only remedy left to the creditor, who stands in the place of the officer, is to obtain damage commensurate with the loss, which he has sustained by the failure of the defendants to redeliver the property as they had contracted to do.

It is again contended, that the action cannot be maintained, because the plaintiff is secure against any claim of the creditor by the equitable assignment of this receipt, and because there is no judgment and execution to which the amount received can be applied. It does not appear from the case, that any judgment has been obtained against the administrator, or that the execution on the judgment against the debtor has been renewed. But the debt, of which the judgment is evidence, has never been paid. The contract of the defendants, long before the death of the debtor, ceased to be security for the redelivery of the property attached in specie, but was like any other agreement collateral to the debt, and had become absolute. The creditor is the equitable owner of this contract and can enforce the payment in the name of the officer, the plaintiff in this action.

This case bears a striking analogy to the case of *Farnham* v. *Gilman*, 24 Maine, 250. There the debtor in the execution had been absolutely discharged under the bankrupt law of the United States. The judgment could not be revived. The officer, who took the receipt, was exonerated from liability because he acted therein in obedience to the direction of the creditor's attorney, and the suit was in the name of the officer, who took the receipt for the benefit of the creditor. In every respect the resemblance is perfect, excepting that in the case referred to, the debtor in the execution was discharged in bankruptcy and the receiptor became absolutely liable ; and in this case the debtor died subsequent to the time when the defendants had by their neglects commmitted a breach of their agreement.

The case is also similar in principle to that of *Franklin Bank* v. *Bachelder*, 23 Maine, 60, which was *scire facias* against the defendant, who had on the original writ, that was against Elwell and Pray, as principals, and himself as trustee, been adjudged upon his own disclosure, trustee of the principal defendants. Judgment was rendered against Elwell and Pray ; and execution issued against them, and against their goods, effects and credits in the hands of the trustee, and

seasonably put into the hands of an officer, who thereupon, and in proper time, made demand of the trustee of the goods, &c., disclosed by him, which he refused to deliver. The defence in the action was, that the debtors in the judgment and execution had become bankrupts, subsequent to the demand of the property and the defendant's refusal to deliver it. It was held, that by the refusal, the defendant had appropriated the property to his own use, and was bound to answer for the value, although the judgment and execution as such, could not be enforced against the debtors. In this case, the defendants, by failing to deliver the property as they had agreed to do, are to be considered as appropriating it to their own use, and they cannot avail themselves of events which occurred after their liability was fixed, in justification or excuse of the omission to redeliver the property, which was at the time unauthorized.                    *Exceptions sustained.*